MAX N. TOBIAS, JR., Judge.
| ,The plaintiffs appeal the granting of a motion for summary judgment in favor of the defendants, the State of • Louisiana, Louisiana State University Health Sciences Center (collectively “LSU Health Sciences”) and J. Philip Boudreaux, M.D. (“Dr. Boudreaux”), dismissing their medical malpractice claim with prejudice. Af *934 ter reviewing the case de novo, we affirm the trial court’s judgment.
In April 2005, the plaintiffs, Gloria Per-tuit, individually, and on behalf of her four children, Donald Pertuit, Donna Siren, John Pertuit, and Daniel Pertuit (collectively, “the Pertuits”) filed two separate medical malpractice complaints with the Patient’s Compensation Fund as a result of the death of Donald Pertuit. The first was against Tenant Mid-City Medical, LLC d/b/a Lindy Boggs Medical Center (“Tenet”), and the second was against Dr. Boudreaux. A medical review panel convened on 17 January 2007, and rendered an opinion against Tenet and unanimously in favor of Dr. Boudreaux and his employer, LSU Health Sciences, opining that the medical treatment by LSU Health Sciences and Dr. Boudreaux met all aspects of the standard of care. The medical review panel further opined that the informed consent was appropriate for the procedure, and that the discussion with the decedent and his family was well documented in the record.
Un March 2006, the Pertuits filed a medical malpractice action in district court against Tenet, Dr. Boudreaux, and LSU Health Sciences. After reaching a compromise of their claim against Tenet in October 2009, the Pertuits dismissed Tenet. Thereafter, Dr. Boudreaux and LSU Health Sciences moved for summary judgment, or alternatively, partial summary judgment, and their motion was heard on 11 December 2009. On 22 January 2010, the trial court, having determined that the consent form was clear, and in light of the plaintiffs’ expert having opined that Dr. Boudreaux did not breach the standard of care in performing the disclosed surgery, ruled in favor of the defendants dismissing the Pertuits’ malpractice action against them, with prejudice. It is from this adverse judgment that the Pertuits timely filed the instant appeal.
The decedent, Donald Pertuit (hereinafter, “Pertuit”), a 68-year old insulin-dependent diabetic, suffered from end-stage renal disease, hypertension, vascular disease and emphysema, among other ailments. In May 2004, Pertuit presented to Jill Lindberg, M.D., a nephrologist, complaining of chest pain and left flank pain.[1] Dr. Lindberg referred Pertuit to the defendant, Dr. Boudreaux, a general surgeon, after an ultrasound revealed a mass in the left kidney, which was suspicious for renal cell carcinoma. A CT scan performed on 13 May 2004, revealed a 5 x 5 centimeter tumor in the upper aspect of Pertuit’s left native kidney, in addition to a suspicious mass near the falciform ligament of his liver.[2]
|aDr. Boudreaux met with the decedent, his wife, and daughter; he recommended a bilateral native nephrectomy to remove all *935 visible tumor, as well as exploration of the liver during surgery. The benefits and risks of the proposed surgery were discussed and, according to Dr. Boudreaux, the only reasonable alternative to the recommended radical nephrectomy and exploration of the liver was to not have the surgery and risk the persistent growth of the documented tumors. Dr. Boudreaux did not discuss with the Pertuits the option of performing a kidney biopsy as possibly a reasonable alternative to the recommended nephrectomy.
The decedent underwent a left radical nephrectomy and liver biopsy performed by Dr. Boudreaux on 25 May 2004. Pathology reports confirmed a diagnosis consistent with lymphoma in both the kidney and liver. The procedure was performed without incident or complication, and Per-tuit’s transplanted kidney remained functional.
Two days post-surgery, the decedent experienced excessive bleeding from the Cor-dis introducer (an access intravenous system) necessitating infusion of intravenous fluids and blood products, and intubation to prevent aspiration. Due to his immuno-suppressed condition, the decedent acquired MRSA pneumonia and a staph epidermis central line infection for which he was treated during his initial hospital stay. He was discharged on 1 June 2004.
|4Because of discoloration in his wound drainage, the decedent returned to the hospital for wound exploration on 4 June 2004. He received treatment for his staff infection and remained hospitalized in ICU until 12 June 2004.
Due to complaints of severe pain in his right lower extremity and discoloration of his foot and toes, the decedent was readmitted to the hospital. An angiogram was performed, revealing a clot in the bypass graft of his lower extremity. A thrombo-lysis was successfully performed and a patent graft was confirmed. The decedent was subsequently discharged on 30 June 2004.
On 7 July 2004, the decedent fell at his home suffering a minor nose injury, but did not seek emergency medical treatment. Four days later, he began complaining of a headache. The decedent died the following day, 12 July 2004, as a result of complications associated with an unrelated cardiac condition.
We review a district court’s grant of summary judgment de novo, applying the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146, p. 8 (La.1/21/04), 864 So.2d 129, 137; Gibson v. Roberts, 97-0454, p. 2 (La.App. 4 Cir. 10/15/97), 701 So.2d 501, 503.
The only issue before this court is whether the trial court erred in granting the Pertuits’ motion for summary judgment on their claim that Dr. Boudreaux failed to obtain the decedent’s informed consent prior to proceeding with the exploratory surgery. The plaintiffs maintain that Dr. Boudreaux’s failure to offer a percutaneous biopsy as a reasonable alternative to exploratory surgery establishes a I ¡^genuine issue of material fact as to whether the consent given by the decedent prior to the procedure was informed.[3]
Under the Louisiana informed consent doctrine,[4] a physician is required *936 to provide his patient with sufficient information to permit the patient to make an informed and intelligent decision on whether to submit to the proposed course of treatment. This information should include, if possible, the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the prospects of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment. A physician must also inform the patient of any alternatives that exist to a surgical procedure. La. R.S. 40:1299.40; Hondroulis v. Schuhmacher, 553 So.2d 398, 411 (La.1988); Morris v. Ferriss, 95-1790, p. 22 (La.App. 4 Cir. 2/15/96), 669 So.2d 1316, 1327.
Dr. Boudreaux does not dispute that a percutaneous biopsy was not offered as an alternative to exploratory surgery when he was advising the decedent about the recommended medical procedures to address the CT scan findings showing suspicious cancerous masses in both the decedent’s kidney and liver. Put simply, Dr. Bou-dreaux testified that he did not — and would not — offer a percutaneous biopsy as an alternative to the proposed surgery because, in his medical opinion, it was not a “reasonable alternative” for treating the decedent. In his medical opinion, the only feasible options for the decedent given his immunosuppressed condition were to perform the radical nephrectomy of the native kidney (which was nonfunctioning) and to explore the area of the liver and remove as much of the mass located there as possible, or do nothing and risk continued growth of the identified tumors. A review of the consent to medical treatment form contained in the record, which was signed by the decedent, clearly indicates that Dr. Boudreaux’s recommendations and the potential risks concomitant to the procedures were thoroughly discussed with the decedent prior to surgery.
In order to prove that a percutaneous biopsy was a reasonable alternative to the decedent’s surgery, the plaintiffs bear the burden of establishing that this alternative was an accepted medical treatment for the decedent’s condition. Morris, 95-1790, p. 23, 669 So.2d at 1327. This included consideration that the decedent was an *937 immunosuppressed transplant patient. A physician has no duty to 17disclose alternative treatments or procedures which are not accepted as feasible. Id.
The sole support for the plaintiffs’ argument that a percutaneous biopsy was a reasonable alternative to the radical ne-phrectomy performed in this case, was the deposition testimony of their medical expert, David Easter, M.D., who stated that he “would have preferred a percutaneous biopsy in this situation” as he thought it was the “better treatment, the better diagnostic move.” Dr. Easter explained that, with the report of the CT scan showing a differential diagnosis of lymphoma of the kidney versus renal cell carcinoma, which in his opinion was more likely lymphoma due to other involved lymph nodes and the other mass that was in the hilum and ligaments of the liver, a biopsy was indicated.[5] It was his opinion that if the diagnosis of lymphoma had been confirmed via biopsy, a nephrectomy would not have been necessary as chemotherapy would have been the recommended course of treatment for this type of cancer. However, Dr. Easter also testified that he could not say that Dr. Boudreaux’s “skipping a percutaneous biopsy [fell below] the standard of care.”[6]
In support of their argument that a percutaneous biopsy was not a reasonable alternative to the proposed exploratory surgery, the defendants offered the decision of the medical review panel that stated:
Specifically, the members of the medical review panel conclude as to Dr. Boudreaux the following:
| sl) The informed consent was appropriate for the procedure and the discussion with the patient and his family was well documented in the record.
2) The procedure as presented was indicated and well within the standard of care.
Additionally, the defendants offered the affidavits of Alan Levin, M.D., and Rene DeBoisblanc, M.D., who were members of the medical review panel rendering the decision; the defendants’ expert witness, Todd Jarrell, M.D., who concurred in the findings of the medical review panel; and, the deposition testimony of Dr. Boudreaux. All five physicians opined that the exploratory surgery for nephrectomy to remove any and all visible tumor and to explore the liver and remove any tumor encountered was indicated under the circumstances and within the standard of care.
Dr. Boudreaux testified that both the pre-operative and clinical diagnosis for the decedent, prior to pathologic information, was renal cell carcinoma with possible liver metastasis. He explained that renal cell lymphoma is a very rare disease and while it was a part of the differential diagnosis for the decedent as noted on the CT scan, it was not the primary diagnosis. He further testified that treatment for renal cell carcinoma or primary lymphoma of the kidney is the same — surgery to remove the kidney.[7] In his opinion, it would violate *938 cancer care principles to open a tumor in the kidney because the goal is to try and completely excise the tumor with all tissue planes intact to ensure good, clear margins. In short, “[w]hile the open biopsy is a lesser operation, it is not a good cancer | soperation on a kidney.” Dr. Boudreaux opined that it is not the standard of care to do open or excisional biopsies of kidney tumors, even if they turn out to be lymphoma, and that in the majority of instances, the open biopsy of the kidney would, in essence, be a nephrectomy. Additionally, Dr. Boudreaux testified that in the case of transplant patients, he does not perform a percutaneous biopsy because of the associated risks and, thus, this procedure was not even an option for the decedent, an immunosuppressed transplant patient. As it was not a viable, feasible, or reasonable option to the recommended exploratory surgery, Dr. Boudreaux did not discuss it with the decedent.
We find the plaintiffs have failed to prove that a percutaneous biopsy was a feasible or appropriate alternative to exploratory surgery for the decedent in this case. First, the evidence is undisputed that the decedent had a kidney tumor that was either lymphoma or renal cell carcinoma, and a mass on his liver. The overwhelming expert evidence in the record is that surgery is the indicated procedure for cancerous tumors of the kidney. Second, the plaintiffs’ expert, Dr. Easter, is the only physician of six who have rendered opinions in this case, that has opined that a percutaneous biopsy was a viable alternative to the nephrectomy. However, we do not find that Dr. Easter’s opinion creates a genuine issue of material fact sufficient to defeat summary judgment in this case because Dr. Easter conceded that he could not say “skipping the percutaneous biopsy” fell below the standard of care. Next, the decedent was an immunosuppressed transplant patient. Dr. Boudreaux does not use a percutaneous biopsy when treating transplant patients because of the associated risks and, therefore, would not have recommended the procedure to the decedent.
|inFor the foregoing reasons, we find no genuine issue of material facts exists and that the trial court properly determined that Dr. Boudreaux’s failure to offer the alternative procedure of a percutaneous biopsy does not negate the decedent’s informed consent for surgery in this case.

AFFIRMED.

. As a result of his renal disease, Pertuit received dialysis until a cadaveric transplant was performed by the defendant, Dr. Bou-dreaux, in May 2002 at the LSU Transplant Center. Additionally, in 2003, due to ongoing peripheral vascular disease secondary to diabetes, Pertuit underwent a right femoral-po-pliteal bypass to relieve claudication, left lower extremity angioplasty, and ray amputation for infected toes of the left foot, as well as a partial amputation of the left foot.

. According to the plaintiffs, the CT scan was reviewed by Richard Vanderbrook, M.D., whose impression was as follows: (1) a soft tissue mass at the level of the portal hilum, extending along the course of the falciform ligament with intraparenchymal component with the left hepatic lobe, suspicious for lym-phamatous involvement in this immunosup-pressed transplant patient; and (2) soft tissue mass extending from mid-pole of left kidney renal cell carcinoma versus lymphamatous involvement of left kidney in the differential. Dr. Vanderbrook’s findings are not contained in the record on appeal.

. The Pertuits have not appealed the trial court’s dismissal of their claim that Dr. Bou-dreaux breached the standard of care in his treatment of the decedent. On appeal, the Pertuits allege only that the trial court erred in granting summary judgment as to their claim for lack of informed consent.

. La. R.S. 40:1299.40 sets forth the requirements for informed consent. It provides, in pertinent part:
*936 A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a handwritten consent to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
[[Image here]]
C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (1) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.
[[Image here]]

. Dr. Easter conceded in his deposition that one of die primary areas of extension of renal cell carcinomas can be to the liver.

. Dr. Easter’s deposition testimony was attached to the Plaintiffs’ Memorandum in Opposition to Summary Judgment submitted to the trial court and, thus, was "filed into the record’’ and can properly be considered on appeal. See Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, pp. 4-5 (La.2/20/04), 866 So.2d 228, 232; La. C.C.P. art. 966 B.

.Dr. Boudreaux disagreed with Dr. Easter that chemotherapy would have been the proper treatment for a diagnosis of lymphoma, especially because the disease was found elsewhere in the body. In his opinion, chemo *938 therapy would have merely been an adjunct to surgical removal of the kidney.